# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| NORMAN A. TAPPER, III,<br>    Plaintiff,<br><br>       v.<br><br>ANDREW M. SAUL,<br>Commissioner of the Social Security<br>Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:18-CV-103-JEM<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Norman Tapper on March 15, 2018, and Plaintiff's Opening Brief [DE 13], filed July 12, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 13, 2018, the Commissioner filed a response, and on October 3, 2018, Plaintiff filed a reply.

**I.    Background**

On March 12, 2010, Plaintiff filed an application for benefits alleging that he became disabled on January 19, 2010. Plaintiff's application was denied initially and upon reconsideration. On June 11, 2012, Administrative Law Judge ("ALJ") Jonathan Stanley held a hearing, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On June 14, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. Plaintiff appealed this decision to the District Court on September 3, 2013. On March 30, 2015, the Court remanded the ALJ's decision, and the Appeals Council remanded the matter to the ALJ. A second hearing was held on September 29, 2016 with ALJ William Sampson, at which Plaintiff, with an attorney, and a VE testified. On

1

February 24, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant's date last insured is March 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 19, 2010 through his date last insured of March 31, 2014.

3. Through the date last insured, the claimant had the following severe impairments: coronary artery disease; sleep disorders; Type II diabetes; status post gastric bypass surgery and obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except the claimant could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and avoid concentrated exposure to extremes of heat and cold.

6. Through the date last insured, the claimant was capable of performing past relevant work as an account executive and electronic technician. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 19, 2010, the alleged onset date, through March 31, 2014, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v.*

*Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III. Analysis**

Plaintiff argues that the ALJ erred in weighing the medical opinions in the record and in making the RFC determination. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

Plaintiff argues that the ALJ erred in giving the opinion of his treating cardiologist, Dr. Clifford Kavinsky, little weight. "[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345

F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Dr. Kavinsky opined in a medical source statement that because of Plaintiff's coronary artery disease, diabetes, and other conditions, Plaintiff could sit for thirty minutes at a time, sit less than two hours total in an eight-hour workday, stand for fifteen minutes at a time, and stand or walk for less than two hours total in an eight-hour work day. AR 869. Dr. Kavinsky further stated that Plaintiff would need to elevate his legs twelve inches off the ground for forty percent of an eight-hour work day due to muscle soreness. AR 870. Finally, Dr. Kavinsky opined that Plaintiff was incapable of even "low stress" work, would be off task twenty-five percent of the time or more, and would miss about three days of work per month. AR 871.

The ALJ gave Dr. Kavinsky's opinion little weight, noting that Plaintiff has had no major cardiac treatment since 2007, and that although he struggled with an exercise stress test in 2012, his readings were normal during a medication stress test. Further, the ALJ noted that Plaintiff lost weight after having gastric bypass surgery, and his diabetes was under control to the point where

5

he no longer required emergency room care. The ALJ relied instead on two other medical professionals who assessed Plaintiff as being capable of performing at least some variation of light work.

However, the ALJ failed to discuss all the relevant evidence supporting Dr. Kavinsky's opinion, including the reasons Plaintiff was unable to complete the exercise stress test in 2012. Plaintiff was able to walk for four minutes and sixteen seconds, but stopped due to leg pain and shortness of breath. Because he was unable to reach the goal heartrate during that time, Plaintiff was forced to switch to a medical stress test, where he showed normal blood pressure and no chest pain or stress arrhythmias. AR 898. However, he remained dizzy, light-headed, and diaphoretic. AR 896. Those results were consistent with Dr. Kavinsky's opinion that Plaintiff could only stand/walk for fifteen minutes at a time due to other concerns, such as leg pain, shortness of breath, dizziness, and light-headedness.

The ALJ also mischaracterized another stress test, taken in 2013, which the ALJ stated showed "good functional capacity." During this test, Plaintiff walked on a treadmill for seven minutes and thirty seconds. The results showed an abnormal resting electrocardiogram suggesting the possibility of an old anterior wall infarction. AR 910. The doctor noted that although "submaximal treadmill exercise test demonstrat[ed] relatively good functional capacity," Plaintiff's exercise-induced symptoms and pain were highly suggestive of angina. AR 910. Moreover, an EKG from two days before the stress test showed thickening of the mitral valve, mitral annular calcification, mild thickening of the trileaflet valve, and mild thickening of the aortic valve. AR 912-13. In sum, the ALJ relied on the phrase "good functional capacity" while ignoring the worsening symptoms noted during the test. An ALJ "cannot rely only on the evidence that supports

6

[his] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (holding that ALJs must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The ALJ also failed to properly weigh the factors in 20 C.F.R. § 404.1527(c) in discussing Dr. Kavinsky's opinion. Although the ALJ need not explicitly discuss and weigh each factor, the ALJ must still consider the factors and "minimally articulate" his reasoning. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Collins v. Berryhill*, 743 Fed. App'x. 21, 25 (7th Cir. 2018). The ALJ failed to evaluate multiple factors, several of which would favor giving Dr. Kavinsky's opinion greater weight. Specifically, the ALJ failed to acknowledge the length, nature, and extent of the treatment relationship, along with the frequency of examination, and the types of tests performed. *Campbell*, 627 F.3d at 308 ("[S]everal of the factors support the conclusion that Dr. Powell's opinion should be given great weight . . . Proper consideration of these factors may have caused the ALJ to accord greater weight to Dr. Powell's opinion."). Dr. Kavinsky treated Plaintiff approximately every six months for at least nine years, and he performed Plaintiff's angiography, angioplasty, and stent placement in 2007. AR 343-49, 363-73, 856-58, 901-05, 920-26, 961-64. Dr. Kavinsky had been treating Plaintiff for nine years prior to completing the written opinion. Although the ALJ noted that Plaintiff didn't see Dr. Kavinsky for eight months between August 2010 and April 2011, it is undisputed that Dr. Kavinsky had a lengthy and regular treating relationship with Plaintiff, which supports giving more weight to Dr. Kavinsky's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

7

The ALJ failed to discuss these factors or indicate that he considered them.

Finally, the ALJ dismissed Dr. Kavinsky's opinion in part because two "other medical professionals" opined that Plaintiff was capable of a variation of light work. The ALJ does not identify those two professionals, but the only other doctors that the ALJ gave weight to were an examining physician (who received "some weight") and a state agency physician ("great weight"). However, both of those opinions were given in 2010, and Plaintiff's date last insured was not until March 31, 2014. The ALJ gave the examining physician "some weight," because diagnostic testing subsequent to his opinion revealed additional limits, and gave the state agency physician "great weight," but added postural and environmental limits to account for further issues not discussed in the opinion. Neither doctor had the records from 2011-2014 – the majority of the medical evidence in this record – when giving their opinions. After 2010, Dr. Kavinsky continued to treat Plaintiff for six years before offering his most recent opinion in 2016. The ALJ failed to build a "logical bridge" to his conclusion that non-treating sources from 2010 should be given more weight than Plaintiff's treating cardiologist, when the cardiologist's opinion was the only one incorporating evidence from the entire relevant period. *O'Connor-Spinner*, 627 F.3d at 618.

Plaintiff also argues that the ALJ erred in failing to account for his sleep disorders in the RFC. The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and

provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. The ALJ's analysis must establish a logical bridge between the evidence and the conclusion. *See O'Connor-Spinner*, 627 F.3d at 618; *Briscoe*, 425 F.3d at 352 (remanding where the ALJ "did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision").

Plaintiff was diagnosed with severe obstructive sleep apnea and severe periodic limb movement disorder in 2011. Although he was prescribed a BiPAP (bilateral positive airway pressure) machine, he continued to report fatigue and sleepiness "throughout the day," and that he needed to take naps. Plaintiff testified that his fatigue affected his concentration at work, and that he occasionally fell asleep on the job.

The ALJ included a single limitation in the RFC addressing Plaintiff's sleep disorders, indicating that he should avoid "concentrated exposure to extremes of heat," in response to Plaintiff's testimony that he would fall asleep in the afternoon when it got exceedingly warm. In assessing Plaintiff's sleep disorders, the ALJ stated that "there was no documentation that the claimant's fatigue was so severe that he was unable to get out of bed in the morning or conduct his activities of daily living." The ALJ noted that, during the hearing, Plaintiff was able to concentrate and "looked to be in absolutely no distress" during the 45-minute hearing, and that he showed "normal communication ability" in a prior medical exam. The ALJ also cited a sleep study questionnaire in which Plaintiff reported a "slight" chance of falling asleep if he were sitting inactive in a public place, which the ALJ said was "a bit inconsistent" with Plaintiff's testimony.

The ALJ made several inferences about Plaintiff's work ability without adequate support in the record. First, to the extent the ALJ relied on his inference that Plaintiff was able "to get out of

bed in the morning [and] conduct his activities of daily living," he failed to draw a logical bridge from the evidence to the work-related limitations he crafted. *O'Connor-Spinner*, 627 F.3d at 618; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Similarly, the ALJ concluded that Plaintiff's apparent lack of distress during the 45-minute hearing and his "normal communication" during a medical exam supported his ability to perform for a full workday. Plaintiff indicated on his sleep study questionnaire that he would not fall asleep if he were "sitting and taking to someone," but that there was a "slight" chance he may fall asleep if he were sitting "in a public place." The ALJ failed to explain why Plaintiff's ability to focus and not fall asleep in a 45-minute hearing (in which he was literally "sitting and talking to someone"), or that his chance of falling asleep in a public place was "slight," meant that his sleep disorders would not limit him at work. Although a medical source statement from Plaintiff's sleep doctor, Dr.

10

Hakam Safradi, indicated that Plaintiff did not have "recurrent daytime sleep attacks," Dr. Safradi declined to address Plaintiff's work limitations, explicitly stating that Plaintiff's primary care physician should complete that portion of the form. The judgments about Plaintiff's medical disorders should have been made by a medical professional, not the ALJ. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. In this case, the ALJ erred in assessing Dr. Kavinsky's opinion, but it is not clear what weight his opinion should be given, and the record does not clearly indicate how Plaintiff's sleep disorders affect his work capabilities. Although the ALJ's analysis was inadequate, remand for benefits is not appropriate here. See *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal").

On remand, the ALJ is instructed to address the factors enumerated in 20 C.F.R. § 404.1527(c) as they apply to the treating physician, and to provide a sound explanation if he or she rejects those opinions, including analysis of the evidence that does not support the ALJ's conclusion. The ALJ must build a logical bridge between the evidence in the record and the ultimate conclusions, including those in the RFC. See *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the

parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion."). The Commissioner should not assume that any allegations not discussed in this opinion have been adjudicated in his favor.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 13] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 30th day of July, 2019.

                                      s/ John E. Martin
                                      MAGISTRATE JUDGE JOHN E. MARTIN
                                      UNITED STATES DISTRICT COURT

cc:     All counsel of record